Matter of Grall v DiNapoli (2021 NY Slip Op 04409)





Matter of Grall v DiNapoli


2021 NY Slip Op 04409


Decided on July 15, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 15, 2021

532355
[*1]In the Matter of Richard Grall, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date:May 25, 2021

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Reynolds Fitzgerald, JJ.

Schwab & Gasparini, PLLC, White Plains (Warren J. Roth of counsel), for petitioner.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondent.



Pritzker, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for accidental disability retirement benefits.
In September 2015, petitioner — a police detective — filed an application for accidental disability retirement benefits alleging that he was permanently disabled as a result of injuries to, among other things, his right hip and back that, in turn, were sustained while pursuing a fleeing suspect in October 2014. The New York State and Local Police and Fire Retirement System denied petitioner's application upon the ground that the incident did not constitute an accident within the meaning of Retirement and Social Security Law § 363. At the conclusion of the hearing and redetermination that followed, the Hearing Officer denied petitioner's application, finding, among other things, that the subject incident occurred during the course of petitioner's routine employment duties and involved risks that were inherent in the performance thereof. Respondent upheld the Hearing Officer's decision, and petitioner thereafter commenced this CPLR article 78 proceeding to challenge respondent's determination.[FN1]
We confirm. "As the applicant, petitioner bore the burden of establishing that his disability arose from an accident within the meaning of the Retirement and Social Security Law, and [respondent's] determination in this regard will be upheld if supported by substantial evidence" (Matter of Harris v New York State & Local Retirement Sys., 191 AD3d 1085, 1085 [2021] [citations omitted]; see Matter of Parry v New York State Comptroller, 187 AD3d 1303, 1304 [2020]; Matter of Piatti v DiNapoli, 187 AD3d 1274, 1275 [2020]). As relevant here, an accident is defined as "a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (Matter of Kenny v DiNapoli, 11 NY3d 873, 874 [2008] [internal quotation marks and citation omitted]; accord Matter of Kelly v DiNapoli, 30 NY3d 674, 681 [2018]; Matter of Parry v New York State Comptroller, 187 AD3d at 1304). Consistent with established case law, "[a]n injury that results from the performance of ordinary employment duties and is a risk inherent in such job duties is not considered accidental" (Matter of Harris v New York State & Local Retirement Sys., 191 AD3d at 1085 [internal quotation marks and citations omitted]; see Matter of Parry v New York State Comptroller, 187 AD3d at 1304; Matter of Angelino v New York State Comptroller, 176 AD3d 1376, 1378 [2019]; Matter of Lewis v New York State Comptroller, 176 AD3d 1545, 1546 [2019]).
In light of certain concessions made by the Retirement System, the sole issue at the hearing was whether the underlying incident constituted an accident. Petitioner testified that, on the day in question, he was driving to work when he saw a vehicle veer off of the road and crash into a delivery truck. Petitioner stopped[*2], approached the vehicle and identified himself as a police officer in an attempt to ascertain whether the driver was injured. In response, the driver put the car in reverse, dislodged his car from underneath the delivery truck, "clipped" petitioner and crashed into petitioner's truck before fleeing the scene. Petitioner called for assistance and gave chase. The driver eventually stopped and fled on foot with petitioner in pursuit. Petitioner, who testified that he never lost sight of the suspect, successfully scaled two chain-link fences during the pursuit. Upon approaching the third chain-link fence,[FN2] which petitioner "presumed . . . was like the first two, because [he] didn't run up to it and look over it," petitioner "went right over it" and fell approximately 15 feet. According to petitioner, the fence was built on top of a retaining wall, and his view of the surrounding terrain was partially obscured by "some shrubbery." As a result of his fall, petitioner sustained certain injuries to his right hip and back and did not thereafter return to work.[FN3]
Although petitioner's application for accidental disability retirement benefits, as well as the incident reports associated with his injury, reference only the injuries sustained following the fall that he suffered during his foot pursuit of the suspect, petitioner argues that he actually sustained two accidents on the day in question — one when he was clipped by the offending vehicle and the other when he fell during his pursuit of the driver.[FN4] We need not determine the precise number of precipitating events, however, as the record makes clear that, at all times relevant, petitioner was engaged in the performance of his routine duties as a police officer.
Petitioner acknowledged that, as a police officer, he had a duty to respond to an accident or a crime that he witnessed — even if he was "on [his] own personal time" — and the record reflects that, after the suspect fled the scene of the initial collision, petitioner immediately reported the event to his employer, sought assistance and gave chase. Petitioner acknowledged that "[p]ursuing and subduing a fleeing suspect is an ordinary employment duty of a police officer" (Matter of Quartucio v DiNapoli, 110 AD3d 1336, 1337 [2013] [internal quotation marks and citations omitted]), and he agreed that such pursuits could entail "chasing [suspects] across all different types of terrain, uneven ground, jumping fences" and the like (see Matter of Sweeney v New York State Comptroller, 86 AD3d 893, 893-894 [2011]; Matter of Neidecker v DiNapoli, 82 AD3d 1483, 1484 [2011]). Additionally, the particular hazard encountered by petitioner, i.e., the elevation change lying beyond the third fence, "could have been reasonably anticipated" (Matter of Stancarone v DiNapoli, 161 AD3d 144, 148-150 [2018]; see Matter of Scofield v DiNapoli, 125 AD3d 1086, 1087 [2015]), notwithstanding petitioner's testimony that vegetation partially obscured his view of the [*3]terrain. Hence, even setting aside the inconsistencies between petitioner's testimony and the description of the incident as set forth in the relevant incident reports,[FN5] which presented credibility issues for the Hearing Officer and respondent to resolve (see Matter of Verille v Gardner, 177 AD3d 1068, 1070 [2019]; Matter of Angelino v New York State Comptroller, 176 AD3d at 1379; see also Matter of Harris v New York State & Local Retirement Sys., 191 AD3d at 1086), substantial evidence supports respondent's finding that this incident was not an accident within the meaning of Retirement and Social Security Law § 363. Petitioner's remaining arguments, including the assertion that the Hearing Officer unreasonably delayed in rendering his decision, have been examined and found to be lacking in merit.
Garry, P.J., Egan Jr., Clark and Reynolds Fitzgerald, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: In the interim, petitioner retired and is receiving performance of duty disability retirement benefits.

Footnote 2: Petitioner testified that each fence was approximately four feet high.

Footnote 3: In his application for accidental disability retirement benefits, however, petitioner indicated that he fell approximately seven feet while "attempting to climb a fence" and landed on his left side.

Footnote 4: Despite this assertion, petitioner acknowledged at the hearing that he did not know whether he "was injured or not" when he had to "get out of the way" of the fleeing vehicle.

Footnote 5: These reports indicated that petitioner was injured when he "fell off a wall."